UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Forseth and Jill Forseth, | Civil No. 13-38 (SRN/TNL) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION AND ORDER |
| Bank of America, N.A., BAC Home Loan Servicing, LP, BAC GP, LLC, Federal National Mortgage Association, and Peterson, Fram & Bergman, P.A., | |
| Defendants. | |

_____

William B. Butler, Butler Liberty Law, LLC, 33 South Sixth St., Suite 4100, Minneapolis, Minnesota 55402; for Plaintiffs.

Andre T. Hanson, Brent R. Lindahl, Fullbright & Jaworski LLP, 80 South Eighth St., Suite 2100, Minneapolis, MN 55402, for Defendants Bank of America, N.A., BAC Home Loan Servicing, LP, BAC GP, LLC, and Federal National Mortgage Association.

Jared M. Goerlitz, Peterson, Fram & Bergman, P.A., 55 East Fifth St., Suite 800, St. Paul, MN 55101, for Defendant Peterson, Fram & Bergman, P.A.

_____

SUSAN RICHARD NELSON, United States District Judge

   This matter is before the Court on Motions to Dismiss filed by Defendants Bank of America, N.A., BAC Home Loan Servicing, LP, BAC GP, LLC, and Federal National Mortgage Association [Doc. No. 6] and Defendant Peterson, Fram & Bergman, P.A., [Doc. No. 12], and a Motion to Remand filed by Plaintiffs [Doc. No. 16].  For the reasons stated below, the Court grants the Motions to Dismiss, denies the Motion to Remand, and dismisses the Amended Complaint [Docket No. 20] with prejudice.

I.     **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs Michael and Jill Forseth bought their home in Brooklyn Park, Minnesota, in 2002. (Am. Compl. ¶¶ 1-2.) In 2007, the Forseths took out a mortgage on the property in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for Countrywide Bank, FSB. (Id. ¶ 14.) In 2010, the mortgage was assigned to BAC Home Loans Servicing, LP ("BAC"). (Id. ¶ 17.)

The Forseths deny that Defendants "can prove default in accordance with Article 3 of the UCC." (Id. ¶ 15.) However, it appears from documents attached to the Amended Complaint that the Forseths were in fact behind on their mortgage payments and did default. (Id. Ex. 2 (letter from Bank of America regarding Mr. Forseth's application for Home Affordable Modification Program, or HAMP, and referencing past-due loan payments).) The Amended Complaint does not discuss when foreclosure proceedings on the property commenced, but states that on March 10, 2011, BAC noticed a sheriff's sale for May 11, 2011. (Id. ¶ 8.) The sale was conducted as scheduled with BAC offering the successful bid at the sale. (Id. Ex. 7 (Sheriff's Certificate of Sale) at 16.)

The Amended Complaint contends that, "[u]pon information and belief," Defendant Federal National Mortgage Association, known as Fannie Mae, acquired an interest in the Forseths' mortgage sometime before the foreclosure process began. (Id. ¶ 18.) No assignment to Fannie Mae is in the public record, however. (Id.) Because this purported assignment was unrecorded, the Forseths contend that the foreclosure process was invalid under Minnesota law. (Id. ¶ 23.) They also contend that the 2010 assignment

from MERS to BAC was invalid because the individual who signed the assignment on behalf of MERS was not authorized to do so. (Id. ¶ 24.) In addition, the Forseths maintain that the power of attorney for the foreclosure executed on behalf of BAC was signed by an individual who did not have the legal authority to do so. (Id. ¶¶ 25-26.) According to the Forseths, these allegedly unauthorized signatures rendered the foreclosure invalid.

In December 2011, Bank of America transferred the property via quitclaim deed to Fannie Mae. (Id. ¶ 29.) The Forseths challenge the signing authority of the individual who signed the deed on Bank of America's behalf. (Id. ¶ 31.) The Forseths also allege that the deed is invalid because Bank of America did not have any interest in the mortgage to transfer to Fannie Mae in December 2011. (Id. ¶ 32.) Fannie Mae commenced eviction proceedings in December 2011, but the Amended Complaint does not reveal the outcome of those proceedings. Nor does the Amended Complaint contain any information about the Forseths' bankruptcy petition, filed in July 2012, although this information is certainly germane, if not essential, to the success of their claims here. (Hanson Aff. [Doc. No. 10-1] Ex. 2 (Petition in Bankr. Case 12-44479 (Bankr. D. Minn.).)

The Forseths originally filed this lawsuit in Minnesota state court in late November 2012. Defendants thereafter removed it to this Court, and after Defendants filed the instant Motions to Dismiss, the Forseths amended their Complaint. Because the Amended Complaint is substantially the same as the originally filed Complaint, the

parties agreed to proceed with the Motions as filed.

The Amended Complaint raises six causes of action. Count 1 seeks a "Determination of Adverse Interests" under Minnesota's quiet title statute, Minn. Stat. § 559.01, and is brought against Fannie Mae "and/or other Defendants whose identity is unknown, claims [sic] an adverse interest, claim or right to the real property . . . . (Id. ¶ 45.) Count 2 asks for a declaratory judgment that the sheriff's sale and deed are void, that the deed to Fannie Mae is void, that the assignment and power of attorney are void, and that the Forseths "remains [sic] the owner of the property in fee title." (Id. ¶ 49.) Count 3 claims "Penalties for Deceit or Collusion" under Minn. Stat. § 481.07 against all Defendants. (Id. ¶¶ 40-49.) Count 4 claims that Peterson, Fram & Bergman, P.A. (the "law firm") violated Minn. Stat. § 580.05 and Minn. R. Prof. Conduct 3.3, and that these alleged violations constitute negligence per se. (Id. ¶¶ 62-72.) Count 5 claims breach of contract against BAC, for BAC's alleged failure to honor its agreement not to conduct a foreclosure sale of the Forseths' property. (Id. ¶¶ 74-78.) Finally, Count 6 claims slander of title against the law firm. (Id. ¶¶ 80-84.)

## II. DISCUSSION

### A. Standing

Defendants' first argument in support of dismissal of the claims here is that the Forseths have no standing to pursue any of the claims because the claims belong to the bankruptcy estate. In response, the Forseths argue that Minnesota's homestead exemption, which exempts an individual's homestead from the bankruptcy estate,

somehow applies to take claims related to that homestead out of the bankruptcy estate as well.

The Forseths' argument regarding the homestead exemption lacks merit. First, the Forseths had no homestead or other rights in the property at the time they filed their bankruptcy petition, so they could not avail themselves of Minnesota's homestead exemption in their bankruptcy proceedings. Moreover, the Forseths' bankruptcy petition did not list their home as an asset, presumably because, at the time they filed the petition, the foreclosure sale had occurred and the six-month statutory redemption period had expired. (Hanson Aff. Ex. 2 at 10 (Bankr. Petition Schedule A - Real Property, stating "None").) Thus, as the Forseths implicitly acknowledged in their petition, they retained no title or interest in the property. See In re Brook Valley VII, Joint Venture, 496 F.3d 892, 900 (8th Cir. 2007) (noting that bankruptcy debtors' "interests in the properties were not extinguished until the foreclosure sales occurred"); see also Johnson v. First Nat'l Bank of Montevideo, 719 F.2d 270, 276 (8th Cir. 1983) ("It is long-settled under Minnesota law that . . . the purchaser at the foreclosure sale acquires a vested right to become the absolute owner of the property upon expiration of the redemption period, or, in lieu thereof, to receive the payment of the purchase price plus interest."); Geo. Benz & Sons v. Willar, 269 N.W. 840, 841 (Minn. 1936) (holding that fee title vests in foreclosure purchaser upon expiration of redemption period).

The foreclosure sale took place in May 2011, and the six-month redemption period of Minn. Stat. § 580.23, subd. 1 expired in November 2011 with no redemption by the

Forseths. At the time of the Forseths' bankruptcy petition in July 2012, Fannie Mae was the fee owner of the property, having received that property via quitclaim deed from BAC, which purchased the property at the May 2011 sheriff's sale. Thus, the Forseths had no property on which to claim Minnesota's homestead exemption. That exemption did not save the Forseths' property from foreclosure and does not save their claims here.

The second reason the Forseths' argument regarding the homestead exemption lacks merit is that the asset at issue is this lawsuit, not the property itself. The Forseths do not dispute that, as of the date they filed a bankruptcy petition, a bankruptcy estate arose that consisted of all of the Forseths' property, including "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "[T]he property of the bankruptcy estate includes all causes of action that the debtor <u>could have brought</u> at the time of the bankruptcy petition." <u>U.S. ex rel. Gebert v. Transp. Admin. Servs.</u>, 260 F.3d 909, 913 (8th Cir. 2001) (emphasis added); <u>see also</u> <u>Carlock v. Pillsbury Co.</u>, 719 F. Supp. 791, 856 (D. Minn. 1989) (MacLaughlin, J.) ("A cause of action is a property right which passes to the trustee in bankruptcy, even if such cause of action is not included in schedules filed with the bankruptcy court.").

The Forseths' claims against Defendants here arose before the foreclosure sale occurred in May 2011, or, at the latest, in December 2011 when Fannie Mae instituted eviction proceedings. They filed for bankruptcy protection in July 2012, and filed this lawsuit in November 2012. Thus, "at the time the [Forseths] filed the [] claim, the claim had long since passed to the bankruptcy estate and the [Forseths] no longer had standing

to bring it." Gebert, 260 F.3d at 913.  This is true of their claims against Fannie Mae, which were listed on their bankruptcy petition, as well as their claims against the remaining Defendants, which were not listed on their petition.  Id.  The Forseths have no standing to bring these claims, because the claims belong to the bankruptcy estate.  The Amended Complaint must therefore be dismissed.

For the sake of comprehensiveness, the Court will also address the Motions to Dismiss and to Remand on their merits.

**B.    Motion to Remand**

The Court ordinarily would address a Motion to Remand before Motions to Dismiss because "a court cannot rule on the merits of a claim before first satisfying itself that it has jurisdiction over that claim."  Welk v. GMAC Mortg., LLC, 850 F. Supp. 2d 976, 982 (D. Minn. 2012) (Schiltz, J.).  Here, however, the Motion to Remand requires a ruling on Defendants' contention that the non-diverse Defendant law firm was fraudulently joined, which in turn requires consideration of the merits of the Forseths' claims.  Id.  Thus, the Court must first determine whether any of the Forseths' claims have merit.

**C.    Motions to Dismiss**

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to Plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  However, the Court need not accept as true wholly conclusory allegations, Hanten

7

v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions Plaintiffs draw from the facts pled. Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

When considering a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings. See Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003), and may also consider public records. Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." Id. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." Twombly, 550 U.S. at 556.

**C. The Claims**

    **1. "Quiet Title" and Related Claims**

The Forseths' quiet title and related claims depend on a chain of facts that is both speculative and implausible. First is the assertion "upon information and belief" that

Fannie Mae acquired an interest in the Forseths' property sometime before the commencement of foreclosure proceedings, and long before BAC deeded the property to Fannie Mae in 2011.  (Am. Compl. ¶ 18.)  Second is the contention that three separate individuals who signed documents regarding the Forseths' mortgage and property did not have the authority to do so:  Steven Bruns, who signed the assignment from MERS to BAC in December 2010 (id. ¶¶ 17, 24); Christian McDaniel, who signed the power of attorney empowering the law firm to initiate foreclosure proceedings on behalf of BAC (id. ¶¶ 25-26); and Michelle Girvan, who signed the quitclaim deed from Bank of America to Fannie Mae in December 2011 (id. ¶¶ 29-30).  The Forseths argue that these individuals' lack of authority deprived BAC of the ability to foreclose, so BAC did not receive title to the property at the sheriff's sale and did not pass any title to Fannie Mae.

But all of these allegations are the sort of implausible facts, unsupported by any evidence, that the Supreme Court held insufficient in Twombly and Iqbal.  For example, the claims in the Amended Complaint require an assumption that a pre-foreclosure assignment to Fannie Mae occurred.  But the only evidence of this assignment is the Forseths' insistence, "upon information and belief," that it occurred.  The more plausible explanation for the absence of any assignment in the Ramsey County records, however, is that there was no such assignment.

The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of

9

America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan.  See Kenneally v. First Nat'l Bank of Anoka, 400 F.2d 838, 842 (8th Cir. 1968) ("[O]nly those who have acted in reliance upon the apparent authority of the agent are entitled to recover where the agent possessed no actual authority.").  There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event.  The Forseths defaulted on their mortgage by not making payments as they promised.  Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims.  See, e.g., Bennett v. Spear, 520 U.S. 154, 162 (1997) (noting that, to establish standing, a plaintiff must "demonstrate that he has suffered [an] injury in fact [and] that the injury is fairly traceable to the actions" complained of).

The Court need not accept as true implausible, speculative allegations such as those asserted in the Amended Complaint.  To the extent their quiet title, slander of title, negligence per se, "deceit and collusion," and declaratory judgment claims depend on the alleged unrecorded assignment and alleged unauthorized signatures, those claims fail to state claims on which relief can be granted.[1]

**2.      Breach of Contract**

---

[1] As discussed in more detail in Butler v. Fed. Nat'l Mortg. Ass'n, Civ. No. 12-2697, slip op. [Doc. No. 26] at 8 (May 15, 2013), to the extent the claims depend on allegations that whatever transpired in the foreclosure process violated the contract between Fannie Mae and BAC/Bank of America, the Forseths do not have standing to challenge any violations of a contract to which they are not a party.

The Forseths' remaining claim arises out of Bank of America's April 30, 2011, letter regarding the potential modification of their mortgage payment obligations under HAMP. (Am. Compl. Ex. 2.) This letter informed the Forseths that Bank of America was missing several documents necessary to process their request for modification under HAMP and requested that they send the documents by May 30, 2011. (Id.) The letter also stated that "no foreclosure sale will be conducted and you will not lose your home during the [HAMP] evaluation." (Id.) Despite this statement, the foreclosure sale occurred on May 11, 2011, and according to the Forseths, Bank of America informed them on May 18, 2011, that their HAMP modification request had been denied. (Id. ¶¶ 11-12.)

The Amended Complaint contends that this letter constituted a contract to postpone foreclosure and that, by proceeding with the foreclosure, Bank of America breached its contract with the Forseths. (Id. ¶ 13.) However, the facts as pled establish that there was no enforceable contract between Bank of America and the Forseths, and this claim fails as a matter of law.

First, Minnesota's credit statute of frauds bars the Forseths' breach of contract claim. That statute prohibits any action to enforce a "credit agreement" unless "the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subd. 2. A credit agreement is any agreement "to lend or forebear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Id. subd. 1. "[A] promise to postpone the foreclosure sale falls

11

squarely within the plain meaning of a forbearance agreement and is thus a 'credit agreement' within the meaning of the [Minnesota credit statute of frauds.]" Brisbin v. Aurora Loan Servs., LLC, 697 F.3d 748, 752 (8th Cir. 2012).

In this case, the letter at issue is not signed by the Forseths. Moreover, the letter expresses no consideration—there is no indication that the Forseths have given, or indeed will give, any consideration for the postponement of the foreclosure. The Minnesota credit statute of frauds thus prohibits judicial enforcement of Bank of America's promise to postpone the foreclosure of the Forseths' property.

Even if the credit statute of frauds did not bar the Forseths' breach of contract claim, however, that claim would fail on its merits. Under Minnesota law, "[t]he formation of a contract requires communication of a specific and definite offer, acceptance, and consideration." Commercial Assocs., Inc. v. Work Connection, Inc., 712 N.W.2d 772, 782 (Minn. Ct. App. 2006) (citing Pine River State Bank v. Mettille, 333 N.W.2d 622, 626-27 (Minn. 1983)). As noted, there is no indication of the exchange of any consideration for Bank of America's promise to postpone foreclosure. This alone means that no binding contract was formed.

In addition, a claim for breach of contract requires that the party claiming breach suffer damage as a result of the alleged breach. See Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd., 703 F.3d 1104, 1107 (8th Cir. 2013) (citing Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp. 2d 951, 961 (D. Minn. 2000) (Doty, J.)). Here, even if Bank of America's promise to postpone the foreclosure sale until May 30 was enforceable, the fact that the foreclosure sale occurred two weeks earlier did not cause the

12

Forseths any damage. There is no allegation that, for example, had the sale been postponed by two weeks, they would have been able to gather the funds to cure the default on the mortgage. The only way the Forseths could potentially have forestalled foreclosure is to have qualified for a HAMP modification, something the letter did not promise and something for which they ultimately did not qualify in any event. There is no damage here and thus no breach of contract claim.

**D.     Fraudulent Joinder**

Having determined that the Forseths' claims fail as a matter of law, the Court must now determine whether the law firm was fraudulently joined to defeat federal jurisdiction over this case. The fact that the Amended Complaint fails to state a claim on which relief may be granted is not dispositive. "Instead, the defendant must show that 'there exists no reasonable basis in fact and law supporting a claim against [that] defendant[].'" Welk, 805 F. Supp. 2d at 995 (quoting, inter alia, Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1004 (8th Cir. 2006)). In other words, a nondiverse defendant is fraudulently joined if there is no reasonable basis for predicting that "'state law might impose liability based upon the facts involved.'" Id. (quoting, inter alia, Block v. Toyota Motor Corp., 665 F.3d 944, 948 (8th Cir. 2011)).

As discussed above, the Forseths' claims, to the extent they rely on alleged phantom assignments and the absence of legal signing authority, are completely devoid of merit and, moreover, are implausible and speculative. There is no reasonable basis in fact or law to impose liability on the law firm under these theories. Similarly, as discussed in

more detail below, there is no reasonable basis for concluding that Minnesota law would impose liability against the law firm for any of the three claims brought specifically against the law firm: "Penalties for Deceit or Collusion," negligence per se, and slander of title.

### 1. Minn. Stat. § 481.07

The Forseths claim "Penalties for Deceit or Collusion" under Minn. Stat. § 481.07. This section and the following section provide for damages for a party injured by an attorney's fraudulent representations in a judicial proceeding. Minn. Stat. §§ 481.07, 481.071. But it is long-settled that these sections do not provide a substantive cause of action but "merely provide the penalty for a successful cause of action with respect to the offending attorney conduct." Beardmore v. Am. Summit Fin. Holdings, LLC, Civ. No. 01-948, 2001 WL 1586785, at *8 (D. Minn. Dec. 10, 2001) (Frank, J.).

> [I]n order to properly assert a claim for damages under either statute, the plaintiff must: (1) specifically allege a claim of fraud as the underlying cause of action, in compliance with Fed. R. Civ. P. 9(b); and (2) show that the offending attorney conduct occurred within the context of a judicial proceeding.

Id. (citing Baker v. Ploetz, 616 N.W.2d 263, 272 (Minn. 2000)). There is no claim for fraud underlying this or any Count in the Forseths' Complaint, and no attempt to comply with the heightened pleading requirements for fraud. There is thus no reasonable basis for believing that Minnesota law would impose liability on the law firm and as to this claim, the law firm was fraudulently joined.

### 2. Negligence Per Se

There is no private right of action to enforce violations of the Rules of Professional

Conduct, nor do those Rules create any presumption that a legal duty has been breached. Leonard v. Dorsey & Whitney, LLP, 553 F.3d 609, 628 (8th Cir. 2009). Thus, to the extent the Forseths rely on Rule 3.3 to establish their negligence per se claim, there was no reasonable basis to do so.

Similarly, the alleged violation of Minn. Stat. § 580.05, which requires attorneys conducting a foreclosure to have a recorded power of attorney before foreclosure, does not give rise to a presumption of negligence. "No state or federal court has ever found a violation of Minn. Stat. § [] 580.05 to be negligence per se." Stilp v. HSBC Bank USA, N.A., Civ. No. 12-3098 (ADM/JJK), 2013 WL 1175025, at *2 (D. Minn. Mar. 20, 2013) (Montgomery, J.). "[T]here is no indication that § [] 580.05 [is a] negligence per se statute[]." The Forseths' reliance on § 580.05 for their negligence per se claim is thus unreasonable and cannot support their claims against the law firm in this case.

### 3. Slander of Title

The Forseths' slander-of-title claim also does not provide a reasonable basis for imposing liability against the law firm here. To prevail in a slander-of-title action, a plaintiff must show (1) a false statement concerning the plaintiff's real property; (2) that was published to others; (3) and was made maliciously, and (4) that such publication caused pecuniary loss in the form of special damages. Paidar v. Hughes, 615 N.W.2d 276, 279-80 (Minn. 2000). The Forseths' claim is that the law firm foreclosed despite knowing that the person signing the power of attorney did not have the legal authority to do so. But even if there were plausible facts supporting this allegation, the law firm's participation in the foreclosure is generally immune from liability. McDonald v. Stewart,

182 N.W.2d 437, 440 (Minn. 1970). In any event, however, the law firm's alleged actions did not cause the Forseths any loss.

The Forseths defaulted on their mortgage. Thus, the foreclosure process was not accomplished with any materially false statements, and did not cloud the title to their property or cause them any pecuniary loss. The cause of the cloud on the Forseths' title is their own actions, not the actions of any of the Defendants here. There was no reasonable basis for believing that the law firm could be liable under a slander-of-title theory, and the law firm was therefore fraudulently joined.

Because the law firm was fraudulently joined, the Motion to Remand must be denied.

**E.   Conclusion**

The allegations in this case do not state a claim on which relief may be granted. The Amended Complaint will be dismissed with prejudice.

## III. ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motions to Dismiss [Doc. Nos. 6 & 12] are **GRANTED**;

2. Plaintiffs' Motion to Remand [Doc. No. 16] is **DENIED**; and

3. The Amended Complaint [Doc. No. 20] is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  May 24, 2013                              s/Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Judge